**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | CASE NO. 4:10CR11 |
| v. | § | |
| | § | |
| MICHAEL PATRICK PIAZZA | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
**DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENT**

This matter having been referred by the Honorable Richard A. Schell, the Court has considered Defendant's Motion to Suppress Statement (Dkt. 20). After considering the evidence presented and the arguments of counsel at the hearing held on July 1, 2010, the Court finds that the motion should be denied.

Defendant Michael Patrick Piazza is charged in this matter with possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). In his motion, Defendant seeks to suppress statements he made to law enforcement on February 7, 2008. Defendant claims that the statements were improperly obtained during a custodial interrogation, without advising him of his *Miranda* rights, and that he was denied counsel despite his requests. In addition, Defendant claims that the statements were obtained in violation of his Fourth, Fifth and Sixth Amendment rights. Defendant therefore argues that his statements were not voluntary and should be suppressed.

1

**LEGAL STANDARD**

The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. Thus, the Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). To protect this right, statements obtained during a custodial interrogation of an accused cannot be used unless the accused has been advised of his right to remain silent and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966). The requirement of *Miranda* that police advise an accused of his rights prior to questioning applies only if the accused is "in custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 445; *Stansbury v. California*, 511 U.S. 318, 322, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). Accordingly, a defendant who voluntarily gives a statement to law enforcement in a non-custodial situation need not be advised of his *Miranda* rights. *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The determination of whether a person is in custody for *Miranda* purposes must be made on a case-by-case basis considering all the objective circumstances. *Stansbury*, 511 U.S. at 323, 114 S.Ct. 1526. A suspect is "in custody" for the purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Courtney,* 463 F.3d 333, 337 (5th Cir. 2006) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)).

In this case, both sides concede that Defendant was not under formal arrest, and therefore the inquiry is limited to whether Defendant was subject to a custodial interrogation. In making this determination, the Court must examine all circumstances surrounding the interrogation and make two inquiries: (1) what were the circumstances surrounding the interrogation and (2) given those circumstances, would a reasonable person think he was not at liberty to terminate the interrogation and leave. *Thompson v. Keohane*, 516 U.S. 99, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995); *United States v. Hurtado*, 899 F.2d 371, 374 (5th Cir. 1990); *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995).

## FACTUAL BACKGROUND & EVIDENCE PRESENTED

The factual circumstances surrounding Defendant's statements are disputed. Accordingly, the Court has reviewed written briefs submitted by each party and considered the arguments and evidence presented at the July 1, 2010 hearing. At the hearing, the government presented testimony from three officers, Detective Jeff Rich, Agent Deborah Michaels, and Agent Miguel Clarke, who were present during the search and subsequent interview. The defense offered testimony from the Defendant, Shirley Piazza (Defendant's wife), and Caroline Piazza (Defendant's daughter).

Defendant, along with his wife and daughter, all essentially testified that they awoke around 6 a.m. on the morning of the search after hearing loud shouts at the front door of their home. Police officers at the door identified themselves as law enforcement. Defendant opened the door, allegedly because he saw a battering ram in motion, to forcefully open the front door. After opening the door, Defendant was removed from the home, during which time Defendant claims his arms were

restrained behind his back while he was led outside during the initial sweep and clearance of his home. By Defendant's own testimony, along with testimony from his wife and law enforcement officers at the scene, Defendant was not restrained by handcuffs. Instead, a law enforcement officer held Defendant's hands behind his back. Defendant testified that this restraint lasted only one to two minutes.

After law enforcement officials were satisfied that the house was free of occupants and weapons, the home was deemed secure, and Defendant and his family were permitted to re-enter the home. At that time, it is undisputed that Defendant and Detective Rich, along with Agent Michaels, agreed to talk about the reason for the search. The facts surrounding the ensuing discussion are disputed. During the hearing, much discussion centered on the seating arrangements of Defendant and the two government agents conducting the questioning. According to Defendant's testimony, he was ordered to the study of his home, and Detective Rich sat in close proximity to him. Defendant alleges that Detective Rich and Agent Michaels were seated so close to Defendant that exiting the room would have required him to climb over the agents. However, the agents disputed that testimony. According to their testimony, Defendant invited them to sit in the room and the seating arrangement did not crowd Defendant or make his exit cumbersome. Photographs taken the morning of the search appear to support the government's contention that the seating was sufficiently spacious and would not obstruct Defendant's exit.

Defendant offered extensive testimony that he was fearful during the government's search of his home. Indeed, Defendant himself stated in the hearing that he did not feel free to leave his

home because he would not have had anywhere to go and he would not have left his wife and children. While officers were executing the search warrant in his home, Defendant conceded that the officer's tone was "appropriate" and he was not compelled to stay for questioning.

## ANALYSIS

Having reviewed the evidence presented in light of governing authorities, the Court finds that Defendant's interrogation was non-custodial. The law is clear in this Circuit that police questioning an accused in his or her own home is not by itself indicative of a custodial interrogation. *United States v. Hurtado*, 899 F.2d 371, 375 (5th Cir. 1990). In the *Hurtado* case, the defendant was interrogated by six agents in a small room of her home. *Id*. The defendant was not told she was under arrest or that she could not leave. *Id*. Despite her claims that she was nervous and surprised at the time of the search, the Court held that psychological pressure due to fear of agents discovering illegal activities is irrelevant. *Id*. Consequently, the Fifth Circuit found that those circumstances did not give rise to a custodial interrogation. *Id*.

Even in circumstances where an accused was not advised of his or her right to leave the premises, the Fifth Circuit has declined to find a custodial interrogation. *United States v. Crawford*, 52 F.3d 1303, 1307 (5th Cir. 1995). In *Crawford*, the court similarly held that the defendants were not in custody for the purposes of their statements, which were made during the execution of a search warrant at their business. *Id*. There, the FBI testified that the defendants did not ask to leave the premises. *Id*. However, significantly for the purposes of the case at bar, they were not advised that they were free to leave. *Id*. In addition, the defendant in that case was not permitted to answer a

phone call during questioning and was prevented from helping customers. *Id*. at 1308. Nonetheless, the court held that the questioning did not give rise to a custodial interrogation. *Id*. at 1308-09.

Of particular significance to the Court is the case of *United States v. McNair*, which was recently decided in the Western District involving the execution of a search warrant on a defendant's home after child pornography was allegedly exchanged via the internet. *United States v. McNair*, 2010 WL 2038297 (W.D. Texas 2010). According to *McNair*, in executing the warrant, eighteen agents, at least two armed with automatic weapons, arrived at the defendant's home. *Id*. at 1. There, the interviewing agent gave similar warnings to the defendant that the interview was voluntary, he was not under arrest, and he was free to leave. *Id*. Applying Fifth Circuit precedent, the district court found that the defendant was not in custody for the purposes of *Miranda*, nor was there a restraint on movement tantamount to a formal arrest. *Id*. at 2. Finally, the district court held that a reasonable person would have felt free to terminate the interview. *Id*. While this case is not binding on the Court's decision here, it provides a clear outline of how such facts are interpreted by the courts in this Circuit.

Despite vastly different factual accounts of the interview in question, the Court finds that the agents here properly obtained the statement and the Government satisfied its burden of showing that Defendant knowingly and voluntarily gave the statement. Specifically, the Court finds that Defendant was not in police custody for the purposes of *Miranda* and that Defendant freely and voluntarily gave his statement. According to the evidence presented, including testimony from three law enforcement officials, Defendant voluntarily gave statements to agents after being advised that

he was not required to speak with them.[1]

The Court heard numerous witnesses testify that Defendant was told he was free to leave, and even Defendant acknowledges that he was told he was not under arrest at that time. In regard to the brief restraint of Defendant's arms during the initial search and clearance of the home, the Court finds that the manner of restraint used was reasonable, particularly in light of concerns for agent safety and extensive testimony that such procedures are standard FBI protocol, and did not rise to the level of custody for the purposes of *Miranda*.

Three government officers testified that Defendant neither requested a lawyer, nor made any reference to a lawyer. In addition, the Court heard testimony from three government agents that Defendant was advised that he was not under arrest. As in *McNair*, while the number of agents in the home and the presence of weapons during the initial clearance of the home was undoubtedly intimidating, that alone does not give rise to a custodial interrogation. *McNair*, 2010 WL 2038297 at 2-3. In *Crawford*, where defendants were not advised that they were free to leave, the court upheld the statements and found that defendants were, even subjectively, not acting under belief that they were in custody or under arrest. *Crawford*, 52 F.3d at 1307-08. Similarly, here, it appears that no reasonable person would believe that he was under arrest. Government agents repeatedly testified

---

[1]Defendant's brief and testimony indicated that Defendant ingested codeine, as prescribed by his physician, shortly before questioning occurred. Defendant testified that the medication makes him "loopy," however he stated that the medicine did not have such an effect the day of questioning. Further, Government agents testified that Defendant appeared coherent. Consequently, all evidence indicates that Defendant's ingestion of codeine on the date in question has no bearing on the Court's analysis here.

that Defendant was told he was free to leave. There is no evidence that Defendant was coerced into giving statements, and in fact, the evidence indicates that Defendant was repeatedly advised of the voluntary nature of his statements. Moreover, in determining whether an accused has been subject to a custodial interrogation, the accused's subjective state of mind or impressions are not relevant to the Court's inquiry. *See generally Crawford*, 52 F.3d at 1307 (using a "reasonable person" standard).

Under the totality of the circumstances, the Court views all of these matters to determine whether a reasonable person would have understood that he was not free to leave. *Courtney,* 463 F.3d at 337; *Bengivenga*, 845 F.2d at 596. After considering the evidence and testimony presented at the hearing, the Court finds that Defendant's Motion to Suppress should be denied.

## RECOMMENDATION

The Court recommends that Defendant's Motion to Suppress Statement (Dkt. 20) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within the time period set forth above shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest

injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 16th day of July, 2010.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE